[Civ. No. 4873.   Second Appellate District, Division Two.—January 13, 1928.]

DANIEL A. DEACON, Plaintiff and Appellant, v. E. F. BRYANS, as Executor, etc., Defendant and Appellant.

A. T. Roark and Wright & McKee for Plaintiff and Appellant.

Arthur F. H. Wright and Heskett & Weinberger for Defendant and Appellant.

CRAIG, Acting P. J.—Both parties appeal from the judgment rendered. The plaintiff does so claiming that he should have recovered on all four counts contained in the complaint. The defendant insists that the evidence does not warrant any judgment against him. In each count a cause of action is stated upon a promissory note alleged to have been executed by Helene D. Henrich, deceased, and of whose estate Bryans is the executor. Each note is alleged to have been lost or stolen from the plaintiff, and to have long since been due and payable and unpaid. The principal of the note described in the first count is said to have been $5,000; that mentioned in the second count, the same amount; that in the third, $966, and that in the fourth, $3,000. Judgment was rendered for plaintiff on the fourth count, and for the defendant on the other three, as to which the findings are that it is not true that the said Helene D. Henrich executed the notes set forth therein.

The plaintiff-appellant insists as one of his grounds for reversal that these findings are unsupported by and contrary to the evidence. We begin an examination of the record, keeping in mind the familiar rule that if a substantial conflict in the evidence is disclosed, the findings of the trial court will not be disturbed on appeal. Also, that the testimony of a witness need not be accepted as true, merely because there is no direct evidence to contradict it. It may within itself bear the earmarks of falsity, or other facts brought out during the trial may justify inferences or presumptions which may be sufficient to establish that

conflict which will result in sustaining the judgment appealed from upon the ground now under consideration. This, we think, is such a case.

The theory of the plaintiff was that the notes had been lost. On direct examination he testified that subsequently to the death of Helene D. Henrich, search was made and the instruments could not be found. Having thus laid a foundation, evidence was admissible to prove the contents of the instruments, and the execution and delivery of them, as alleged in the complaint. The plaintiff failed to produce such testimony, at least of the character which would warrant this court in saying that the trial judge was compelled as a matter of law to believe and accept it. One witness, William Kittner, called by the plaintiff, did not recall having seen any notes signed by Mrs. Henrich. Another witness, Humphreys, had seen notes bearing a signature purporting to be that of Helene D. Henrich, but he did not pretend to know her signature or to say that those appended to the notes concerning which he testified were signed by her.

Only one witness claimed to know the signature of the deceased. This was E. C. Jennings. Having qualified as to his familiarity with her signature, he said that the plaintiff had shown him four notes, each bearing the signature of Helene D. Henrich. He gave some detail of the contents of the notes, but not sufficient to remove reasonable doubts which may well have been entertained by the trial judge that these were the same notes described and relied upon by the plaintiff in his complaint.

The allegations of paragraph II of the first count are: "That on or about the 19th day of March, 1921, at the City of San Diego, in said county and state, the said Helene D. Henrich, for a valuable consideration, made, executed and delivered to the plaintiff her certain promissory note in writing, by the terms of which the said Helene D. Henrich thereby agreed to pay to plaintiff, at his place of business at No. 851 Second street, in said City of San Diego, the sum of five thousand dollars ($5,000.00) at the rate of one hundred dollars ($100.00) per month, together with interest on the principal at the rate of seven per cent (7%) per annum, payable monthly, said installments of principal

and interest being payable upon the 19th day of each and every month thereafter until the whole of said principal and interest should be fully paid, and providing further that in case said payments of principal and interest or any of them should not be paid when due and payable according to the terms of said promissory note, then the whole of said principal and interest should become immediately due and payable at the option of the holder of said note, and said promissory note further provided that in case suit should be commenced or an attorney employed to enforce the payment thereof, then, in that event the said Helene D. Henrich agreed to pay to plaintiff an additional sum of ten (10) per cent on said principal and accrued interest as attorneys fees in such suit.''

The witness Jennings, upon whose testimony plaintiff must rely, described no such instrument as among those which he saw in possession of the plaintiff in May, 1922, the date upon which he testified that he saw certain notes. It is true that it is an unquestioned requirement that in proving a lost instrument evidence of the contents should be sufficient to show without reasonable doubt its substantial parts. Counsel for plaintiff argue that the parts not shown are not material, and hence that the proof was sufficient. But, in addition to the need for evidence to prove the substantial parts of the document lost, in order that certainty may exist as to its terms, the further and equally important purpose is to identify the instrument as being the one upon which suit has been brought, for it would not do to sue on one cause of action and prove another, regardless of the certainty of the proof upon the material parts of that other. As to the $5,000 notes the witness Jennings merely remembered that one was typewritten, and that the other was on a stationer's form. In one answer he said that the typewritten note was "for $10,000 or $5,000," that it was a "promise to pay Daniel A. Deacon," and was signed "Helene D. Henrich." We need not employ time and space to point out that this description is wholly inadequate as an identification of the note set forth in the first count. Not only is the identification insufficient, but material terms stipulating place, time, and manner of payment of the note are unmentioned by the witness. It is true that

he said this note was the same as a certain printed form, which form was, over objection of the defendant, introduced as Plaintiff's Exhibit "A." But an inspection of this exhibit reveals that it conflicts with the note set up in the first count as to manner of payment, and, of course, the form supplies no information as to the time or place of payment.

We proceed to consider the cause of action alleged in the second count. Paragraph II thereof reads: "That on or about the 12th day of August, 1921, at the City of San Diego and State of California, the said Helene D. Henrich, for a valuable consideration, made, executed and delivered to the plaintiff her certain promissory note in writing, by the terms of which she promised and agreed to pay to plaintiff at his place of business at No. 851 Seventh street, San Diego, Cal., on or before the 12th day of August, 1922, the sum of five thousand dollars ($5,000.00), with interest thereon at the rate of seven per cent (7%) per annum from said date until paid, said note further providing that in case suit should be commenced, or an attorney employed to enforce the payment thereof, then the said Helene D. Henrich agreed to pay an additional sum of ten (10) per cent on such principal and interest as attorneys' fees in said suit."

As to the $5,000 notes, the witness Jennings, in addition to his testimony above quoted, stated, referring to the one on the printed form, "it was for $5,000," and that the maker promised to pay Daniel A. Deacon $5,000, and that it was in the usual legal form. Again, he said this note was in the same form as Exhibit "A," and that he recognized the sameness, because he had signed notes on this identical form. But, as customary, the form in question leaves many elements blank, and concerning all such items the mind of the witness was also blank. He could not remember the date of any of these notes; nor when they became due; nor whether Helene D. Henrich's name was the only one appearing on the front of the notes; he had no recollection as to the rate of interest, if any, provided, or whether there was a provision for compounding interest if not paid when due; or whether or not the notes contained an acceleration clause, or provision for attorneys' fees in case of suit brought to collect; nor did the witness remember where the notes were made payable. If, as Jennings

testified, the notes were upon a form identical with Exhibit "A," they were payable "to the order of" Deacon, but the allegation of count II of the complaint is that the note therein sued upon was payable "to the plaintiff."

With such incompleteness in the proof of the execution of the particular note described in the second count, and such dissimilarity between the contents of the note which the evidence tended to establish as having existed (and which both sides during the trial and in the briefs on appeal assume was the same note as that declared on in the second count if it was any one of those sued upon), the trial court would have been entirely justified in concluding that the note thus proved was not the one alleged in said count. Such a conclusion is consistent with the court's findings. The question involved is one of fact, and there is substantial evidence to support the finding. Under these circumstances the case presented does not require a determination as to whether or not certain of the parts of a note are material— a question much discussed in the briefs. It is easily conceivable that a conflict upon a matter immaterial to the validity of a note might fully justify the conclusion that descriptions of notes do not identify the same instrument. For example, suppose it were alleged in the complaint that the lost note was on a form printed only by a certain publisher, and a witness shown a printed blank put out by another publisher had identified it as the one employed for the note which he had seen. Here, if the trial court should hold that the proof was insufficient to show the note described in the complaint to have ever existed, it is clear that its decision would be upheld although the evidence may have shown that a note was executed and may have proven every material part thereof. The evidence would have indicated a different note from that sued upon. This question of identity must always be one of fact. It is one which clearly arose in the decision of the issues presented on the second count in this case and in weighing the evidence offered in plaintiff's attempt to establish it.

It is quite clear that the evidence failed to prove the existence of the note sued on in the third count. Without pointing out other deficiencies in that regard, it is sufficient to mention that the note described in the pleading

is alleged to be one for $966. No witness testified to having seen a note for even approximately that sum, the nearest approach being that the witness Jennings thought the principal of one of the notes which he claimed to have seen was something over $600.

■ It is urged that the trial court erred in sustaining objections to the plaintiff's testifying to certain events and conversations which took place prior to the death of Helene D. Henrich. Plaintiff concedes that under section 1880 of the Code of Civil Procedure ordinarily these rulings would have been required. However, he insists that the defendant waived the objection allowed by this section. It appears that during the cross-examination of Deacon counsel for defendant asked a number of questions having to do with the loss of the notes the answers to which necessarily concerned incidents happening before the demise of the maker. The questions and answers are as follows:

"Q. When did you make your last search for the alleged notes in question? A. About three weeks ago. Q. When did you make your first search for them? A. After the deceased—do you want me to answer, before the deceased died? Q. Well, I say, when did you make the first search for the notes? A. The first search I made was—let me see— May 31, 1922. Q. Where did you make the search? A. In my office. Q. Did you have a safe? A. Yes, sir. Q. Did you look in the safe for them? A. I did. Q. Did you make a thorough search at that time to see if you could find them? A. I did. Q. How long before that had you missed them? A. I don't remember. Q. Well, approximately how long? A. Oh, not more than a couple of hours. Q. The same day? A. The same day. Q. The search was made at your office? A. Yes. Q. Had you been keeping them in the safe? A. I had up to the time I took them to the apartment house. Q. That was the 31st of May, 1922? A. The last—yes, a year ago."

Helene D. Henrich died on November 30, 1922.

The provisions of section 1880 of the Code of Civil Procedure, applicable here, read as follows: "The following persons cannot be witnesses: . . . Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an

executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person.''

■ It cannot be doubted that the incompetency of the plaintiff may be waived by an executor. (*Kinley* v. *Largent,* 187 Cal. 71 [200 Pac. 937].) That such a waiver results when the representative of the estate of the deceased interrogates a plaintiff concerning what took place before the death of the deceased, has also been decided in *McClenahan* v. *Keyes,* 188 Cal. 574 [206 Pac. 454].

However, the defendant contends that anything which the plaintiff may have testified on cross-examination concerning the loss of the notes did not make him a competent witness as to any transaction occurring before the death of the deceased and concerning the making, existence or delivery of the notes, and it is pointed out that the matters upon which the plaintiff was cross-examined had to do only with the circumstances surrounding their alleged loss. *Bagley* v. *Eaton,* 10 Cal. 126, is cited as authority for the position thus taken, and as holding that where the testimony adduced relates to matters merely preliminary and incidental, the provision of section 1880 of the Code of Civil Procedure does not apply. At the time of the decision rendered in *Bagley* v. *Eaton,* said section had not been enacted. The common-law inhibition as to any party to an action testifying was then the rule, but since that section became the law a number of decisions have indicated the views of the supreme court upon the question here presented. ■ We think the net result of these is to establish the rule that the language of the section is to be applied literally; that the parties prohibited from being witnesses cannot be witnesses—that is, cannot testify at all ''as to any matter or fact occurring before the death of such deceased person,'' whether incidental, preliminary, or otherwise. To this effect are *Blood* v. *Fairbanks,* 50 Cal. 420, and *Moore* v. *Schofield,* 96 Cal. 486 [31 Pac. 532]. It is true that there is some apparent conflict in our authorities. In *Roche* v. *Ware,* 71 Cal. 375 [60 Am. Rep. 539, 12 Pac. 284], *Colburn* v. *Parrett,* 27 Cal. App. 541 [150 Pac. 786], and *Tipps* v. *Landers,* 182 Cal. 771 [190 Pac. 173], the right of a plaintiff to identify books kept during the lifetime of the decedent is

upheld, but these decisions are limited by the holding in *Stuart* v. *Lord,* 138 Cal. 672 [72 Pac. 142], and *Colburn* v. *Parrett, supra,* that the party can go no further than to identify his books and is not permitted to testify as to their correctness.

We conclude that in cross-examining Deacon as to incidents occurring before the death of the deceased, the defendant waived the incompetency of the witness under the provision of section 1880 of the Code of Civil Procedure, and hence that the subsequent rulings of the trial court sustaining objections to questions on redirect examination having to do with other material issues and incidents occurring before the death of Helene D. Henrich were prejudicially erroneous.

■ As we have stated, judgment was rendered in favor of the plaintiff on the fourth count. This is the one alleging a note in the principal sum of $3,000. It cannot be disputed that the amount of a note is one of the parts which are material. Here we have the situation that the witness Jennings did not testify that either of those which were shown him by the plaintiff was for $3,000. In this respect his testimony was as uncertain as it was concerning the note set up in the third cause of action. On the other hand, although the witness Humphreys stated that one of the notes exhibited to him was in the amount of $3,000, this witness could not say that any of these notes bore the signature of Helene D. Henrich. He did not profess to know her signature, and hence it must be conceded that his testimony cannot be accepted alone as proof of a material and necessary part of the note. Although the court found that the deceased executed a note for $3,000 as alleged, the record presents not a conflict of evidence as to this count, but an entire lack of competent evidence to sustain the finding.

■ No error was committed by the ruling permitting the witness Jennings to testify that the notes which he saw in possession of the plaintiff were in the same form as Plaintiff's Exhibit "A." In answering this question the witness was not testifying to his conclusion any more than every statement of a fact is in one sense a witness' conclusion. The question thus presented is not distinguished from that of *Kenniff* v. *Caulfield,* 140 Cal. 34, 43 [73 Pac. 803], where

it was held proper to permit a witness to state that a blank form of deed exhibited to him was the same as he had used in making the conveyance in question.

There are other points presented by the appellants, but in view of our decision upon those herein discussed it will be unnecessary to consider them.

The judgment is reversed and the case remanded for a new trial upon all four counts.

Thompson, J., and Valentine, J., *pro tem.*, concurred.